**Dorothy Handler, Plaintiff-Appellant, v. Margaret Eckhouse, Defendant-Appellee.**

**Gen. No. 48,908.**

First District, Third Division.
January 16, 1964.
Rehearing denied February 6, 1964.

Donald Eugene Hoopingarner, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, Richard G. French and D. Kendall Griffith, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff was a guest passenger in the auto of the defendant. Her complaint charged that she was

injured because the defendant, disregarding her warnings, drove the auto in a wanton and willful manner, at a dangerous speed, on a wet and slippery pavement. The case was tried by a jury which found the defendant not guilty. The plaintiff's motion for a new trial was denied.

█ In her appeal the plaintiff makes two general points: (1) the verdict is against the manifest weight of the evidence and (2) the verdict resulted because the prejudicial misconduct of the defense counsel deprived the plaintiff of a fair trial. The latter point is supported by 56 contentions and examples dealing with various phases of the trial. Complaint is made of misconduct in the cross-examination of the plaintiff, in the cross-examination of a witness for the plaintiff, in asking impeaching questions of the plaintiff, in tendering instructions, in not tendering instructions, and in final argument. However, the attorneys who represented the plaintiff at the trial did not complain of prejudicial misconduct in any respect; and their post-trial motion did not claim any error in regard to misconduct, the cross-examination of either the plaintiff or the witness, the instructions either given or refused, or the argument of counsel.

With the record in this condition we cannot consider the errors listed under the plaintiff's second point. Errors relied upon for a new trial must be included in the post-trial motion (Ill Rev Stats 1955, c 110, § 68.1(2)) and must be set forth therein with particularity (Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209). If they are not, they are deemed to have been waived. However, the plaintiff seeks to circumvent the statute by an ingenious theory: all the supposed errors are laid at the door of the defense counsel and are grouped together as prejudicial misconduct on his part; it is then argued that inclusion and specification in the post-trial motion of

the points relied upon for a new trial are not necessary if the basis of the appeal is such misconduct. The opinion of this court in Ryan v. Monson, 33 Ill App2d 406, 179 NE2d 449, is cited as supporting this theory.

The Ryan case was a personal injury suit in which the jury returned a verdict for the defendant. Among the plaintiff's assignments of error were the prejudice resulting from the final argument of the attorney for the defendant, and his remarks and conduct during the trial. We reversed because there was a pattern of misconduct throughout the trial and because the argument was seriously prejudicial. Although the plaintiff's attorney had objected at other times during the trial, he did not do so while the final argument was in progress. In reference to this omission we said that there was an exception to the general rule that there must be an objection to prejudicial argument; this was when the argument was so unwarranted and so seriously prejudicial that it called for the intervention of the court despite the absence of objection. This finding seems to have misled the plaintiff in the present case. And overlooked completely is the fact that the post-trial motion in the Ryan case charged the defense counsel with improper and inflammatory remarks during the course of the trial and in final argument, and listed eight specific instances of prejudicial misconduct. There is nothing in our Ryan opinion which intimates that points relied upon for a new trial and for reversal do not have to be included in a post-trial motion. There is no foundation in law for the theory advanced by the plaintiff.

The plaintiff's remaining point is that the verdict is against the manifest weight of the evidence. The accident happened early in the afternoon, on a rainy, drizzly day. Both the plaintiff and the defendant lived in Winnetka and were going to downtown Chicago. Mrs. Eckhouse, the defendant, picked up

Mrs. Handler, the plaintiff, and drove south on Sheridan Road until they came to Bryn Mawr Avenue where a left-hand turn was made to go east to the Outer Drive. As the car reached the Outer Drive (which at that time went no farther north) and rounded the turn to go south, it skidded to the right, hit the right-hand curb, swerved again, crossed the three southbound lanes, went over the painted center line and struck a northbound car. The impact was violent and Mrs. Handler was seriously injured.

The testimony of Mrs. Eckhouse and Mrs. Handler was flatly contradictory. Mrs. Eckhouse testified that she stopped for a red light at Sheridan and Bryn Mawr, that she then proceeded east on Bryn Mawr at 15 to 20 miles per hour; that she was in the center lane of three southbound lanes as she turned into the Outer Drive; that the car skidded to the right, hit the right-hand curb, moved southward, swerved on an oil patch, went diagonally to the left across the three southbound lanes, and crossed over the yellow line where it collided with the northbound car. She said she had observed the speed limits from Mrs. Handler's home to the place of the accident and at no time did Mrs. Handler complain about the way she drove.

Mrs. Handler, who had ridden with Mrs. Eckhouse on previous occasions, testified that on this trip Mrs. Eckhouse exceeded the speed limit many times, often going as fast as 40 miles per hour in the suburbs and up to 50 miles per hour in the City; that she protested throughout the trip and once threatened to get out and take a taxi. She said Mrs. Eckhouse made the left turn from Sheridan east into Bryn Mawr without stopping, and did so at a speed of 40 to 50 miles per hour; that the car struck the right curb just east of Sheridan. She further testified that she again warned Mrs. Eckhouse to slow down, but instead of doing so

Mrs. Eckhouse increased her speed as she made the right turn into the Outer Drive, where she struck the curb a second time before going east across the Drive.

Mrs. Handler was impeached by a deposition and by a statement. In one she had said the speed was greater than she testified; in the other she had said there was no speeding at all. In the deposition she stated that Mrs. Eckhouse at times drove between 50 and 60 miles an hour. She also stated that she never at any time asked to get out of the car. In the statement, which was taken in the hospital the day after she was injured, she said that Mrs. Eckhouse was a good driver who observed the speed limits; that she drove carefully the day of the accident and that the accident was caused by something on the road which made the car skid. Mrs. Handler disclaimed knowledge of the hospital statement. She said she did not remember it—that she was under sedation at the time it was supposed to have been taken.

Two traffic policemen who came to the scene of the accident testified that it had been raining, that the street was wet and that there were patches of clay and mud on the roadway, spilled from trucks engaged in constructing the Outer Drive northward to Hollywood Avenue and in resodding the area around the Edgewater Beach Apartments, which were just west of the corner.

There was no dispute that the defendant's car skidded before crashing into the other auto. What was in dispute was whether the skidding was accidentally caused by the condition of the roadway or was brought about by the willful conduct of the defendant. The way the defendant drove on the trip, what took place in the car and what happened immediately before the skidding were matters within the knowledge of the two occupants. The only proof of the defendant's wanton and willful conduct was the

testimony of Mrs. Handler. Her testimony was discredited by her two prior statements. Mrs. Eckhouse' testimony that there were slippery substances on the roadway was corroborated by the police officers and by Mrs. Handler herself who testified that there was "lots of gravel" on it.

The jury either disbelieved Mrs. Handler's version of the accident or concluded that she had not sustained her burden of proof. The jury not only found Mrs. Eckhouse not guilty but, in answer to an interrogatory, specifically found that she had not driven her car in a wanton and willful manner. There was evidence to support these findings and the verdict certainly was not against the manifest weight of the evidence.

The judgment of the Circuit Court will be affirmed.

Affirmed.

SCHWARTZ, P. J. and McCORMICK, J., concur.